**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.: 08-23348-CIV-HUCK**

HANS JULCEUS,

    Plaintiff,
vs.

CITY OF NORTH MIAMI,

    Defendant.
_____/

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

    This matter is before the Court upon Defendant City of North Miami's motion for summary judgment under Federal Rule of Civil Procedure 56. *See* Doc. 19. Plaintiff Hans Julceus brought claims for employment discrimination and retaliation under Title VII of the Civil Rights Act of 1964 and the Florida Civil Rights Act (FCRA).[1] *See* Doc. 1. Julceus responded to the motion for summary judgment, and North Miami filed a reply. Having reviewed and considered the parties' briefs, the record, and being otherwise duly advised, the Court holds that North Miami is entitled to summary judgment because Julceus has failed to present legally sufficient evidence to support a finding that North Miami unlawfully discriminated or retaliated against him. Because the Court finds that no genuine issues of material fact exist and North Miami is entitled to judgment as a matter of law, North Miami's motion for summary judgment is granted.

    Julceus, who is a black Haitian, worked as a housing code officer for the City of North Miami from 2005 until 2008. In January 2008, North Miami fired Julceus because he neglected to conduct mandatory site inspections. Julceus claimed that he inspected dozens of properties, but his daily work log showed that no inspections occurred and North Miami found that Julceus arbitrarily closed cases based on these fictitious inspections.

    In summary, the Court finds that Julceus cannot make the threshold showing on his discrimination claims that he and a white co-worker were similarly situated in their training duties or qualifications for promotion. Julceus's retaliation claims are also deficient because (1) Julceus cannot show a casual relationship between his statutorily protected expression and

---

[1] The standard for liability under the two statutes is identical. *See Harper v. Blockbuster Entm't Corp.*, 139 F.3d 1385, 1387 (11th Cir. 1998).

his ultimate termination, and (2) Julceus cannot show that North Miami's contention that Julceus was terminated for neglecting his job responsibilities, and in particular for failing to conduct necessary follow-up inspections for code violations, was a pretext for retaliation.

## BACKGROUND

Julceus began working for North Miami as a housing code inspector and enforcement officer in November 2005. His duties included inspecting building and housing sites in North Miami to ensure compliance with building and housing codes. Julceus alleges that Jacqueline Gonzalez, who became the director of his department in April 2007, discriminated against him based on his race and national origin. Aside from Gonzalez, Julceus does not allege that any other North Miami employee discriminated against him. Julceus claims that he complained about Gonzalez's discriminatory actions and, in an act of retaliation, Gonzalez fired him five months later.

### A.   Discrimination Claims

Julceus's discrimination claims are based on Gonzalez's alleged disparate treatment of Julceus and a white employee named Alan Graham. Julceus claims that Gonzalez unlawfully discriminated against him when she recommended Graham for a 5% pay increase for time he spent training a new employee named Vidalyn Christie. Gonzalez did not make a similar recommendation for Julceus, even though Julceus also participated in training Christie. The training activities that Julceus and Graham performed, however, were not comparable. Graham spent 60 days training Christie in the duties of a code enforcement officer, which included training Christie in the procedures for investigating complaints, conducting inspections, appearing before code enforcement boards, and preparing testimony in code cases. *See* Docs. 25-3; 36-3 at 8:22-9:4. Julceus's training activities were more limited. Christie rode with Julceus for two days in April 2007 as Julceus performed visual inspections. Julceus may also have shown Christie how to open a case. *See* Doc. 20-2 at 68:25-69:11. North Miami argues that the training activities performed by Julceus and Graham are too dissimilar to serve as the basis for a charge of discrimination.

Julceus also claims that Gonzalez discriminated against him based on his race or national origin when, in June 2007, Gonzalez promoted Graham to the position of "minimum housing supervisor," an unadvertised position, which gave Graham a higher salary and supervisory responsibilities. There is no indication that Gonzalez considered Julceus for this position. Nonetheless, North Miami contends that it is entitled to summary judgment on Julceus's failure to promote claim because (1) Julceus cannot show that he was qualified for

the promotion, (2) Gonzalez promoted Graham because he possessed superior qualifications, and (3) Julceus has not put forward any evidence that he possessed qualifications comparable to Graham's. According to North Miami, Graham possessed significant supervisory experience, which Julceus lacked, more code enforcement experience than Julceus, and, unlike Julceus, did not have disciplinary problems in his employment record.

**B.      Retaliation Claims**

Julceus's retaliation claims are based on events that followed a written reprimand that Gonzalez issued to Julceus on July 6, 2007. In the days leading up the reprimand, Gonzalez had directed Julceus to inspect an apartment building after a principal of an adjacent school alerted the mayor and city manager that rats were coming on school properly from dumpsters outside the apartment building. According to the reprimand, Julceus neglected to take appropriate action to address serious code violations at the apartment building:

> Mr. Julceus went to the apartment property as instructed and cited them with seven (7) minimum housing code violations, *many of which require[d] immediate follow-up and resolution*. As of this date there has been no re-inspection of the . . . Apartments, and Mr. Julceus has not scheduled the violations to be heard by a Special Magistrate.

Doc. 20-7 (emphasis added). In addition to Julceus's failure to adequately follow up on the apartment building's code violations, the reprimand also cites Julceus for general neglect of his case load. Julceus had 154 unresolved cases, which dated back six months, but took sufficient action to resolve just five cases. The written reprimand cited 59 cases in need of immediate follow-up action and stated that Julceus's further failure to perform his duties could result in his suspension or termination. Julceus appealed the reprimand. Clarence Patterson, the City Manager, concluded that the reprimand was appropriately issued and should be placed in Julceus's personnel file. *See* Doc. 20-9.

The reprimand set off a string of increasingly tense and acrimonious emails between Julceus and Gonzalez over a period of approximately two weeks. Julceus questioned the merits of the reprimand, which he interpreted as an attack on his character and integrity. Gonzalez responded by explaining to Julceus that he needed to review the unresolved code violations in his file and conduct follow-up inspections for each violation. In his final email, sent on July 25, 2007, and copied to Rebecca Jones, the head of human resources for North Miami, Julceus accused Gonzalez of unlawfully discriminating against him. Julceus charged that Gonzalez's repeated requests for a "plan of action" to resolve code violations "constitute[d] [an] abuse of power, harassment and apparent discrimination." Julceus also

3

accused Gonzalez of levying "libelously serious misconduct and collusion charges that misconstrue my moral character" and further stated that "I expect to be treated with mutual respect, courtesy, managerial professionalism and dignity. The <u>color of my skin, national original [sic], age, religion</u>… should not motivate your treatment." Doc. 20-8. Jones invited Julceus to file a formal complaint of discrimination against Gonzalez, but there is no evidence in the record that Julceus did so. *See* Doc. 20-10.

Following the reprimand, Gonzalez and Graham continued to monitor Julceus's unresolved cases. Graham gave Julceus "action sheets" for the unresolved cases. Each sheet contained a "Re-Inspection Request" stamp, which including the words "Re-Inspection Request." Below the "Re-Inspection Request" stamp were blank lines for Julceus to fill in the inspection date, the inspecting officer, and the results of each inspection. Julceus returned the sheets to Graham, but Graham found several problems with Julceus's work and reported them to Gonzalez. Graham found that some of the sheets did not have any inspection date on them, some of them were dated before Graham had even asked Julceus to perform re-inspections, one was dated on a Saturday (a non-work day), and 93 of them were dated as inspected on days for which there was no corresponding inspection entry in Julceus's daily activity reports. *See* Doc. 25-5. Gonzalez reviewed Julceus's cases on her own and concluded that Julceus had arbitrarily closed cases, backdated computer entries, and falsified case histories. Gonzalez informed Patterson of her findings. *See* Doc. 25-6.

The issue of Julceus's unresolved/improperly closed cases continued to fester throughout the fall of 2007. In late September, Graham instructed Julceus to take appropriate action on 131 cases that remained unresolved. *See* Doc. 20-12. In November, Julceus's annual performance review assessed his performance as "unsatisfactory," the lowest possible rating, in four out of seven categories, which included attendance, quantity of work, initiative and cooperation, and reports and correspondence. *See* Doc. 20-15. Graham reported to Gonzalez in December that there were various problems in over one-third of Julceus's remaining unresolved cases. These problems included missed inspections, failure to set cases for a hearing, and failure to take any action following the issuance of an initial citation. *See* Doc. 20-13.

On January 4, 2008, Gonzalez fired Julceus. After fully reviewing Julceus's work, Gonzalez discovered that Julceus had closed cases improperly and marked as "inspected" cases in which no inspection occurred. Gonzalez concluded that just 22 out of Julceus's 129 closed cases were properly closed. According to Julceus's log, the overwhelming majority of

4

his cases were resolved in the short period between July 9 and July 12 (the days following Julceus's reprimand). Although Julceus indicated that several were resolved in June, Gonzalez found that Julceus had backdated those entries. In a "Notice of Termination," Gonzalez cited the following problems with Julceus's closed cases:

- 84 cases were signed as "inspected" when no inspection was made;
- 16 cases contained inspection dates even though no inspection had actually occurred, and the inspection dates were improperly backdated on computer entries;
- 13 cases were closed for "building no permit" violations, but no building permits were on file; and
- 16 cases were closed for permit violations even though there was no indication that permits had been applied for or were issued, or that Julceus conducted follow-up inspections.

Gonzalez explained to Julceus in the Notice of Termination that

> [e]xcepting the 22 violations that you closed and I have deemed acceptable, the balance of the violations you turned in as resolved are not acceptable and reflect a work product and work ethic that is not acceptable. My extensive research shows that you did not perform re-inspections; you did not research as to whether or not permits were applied for, or issued; and you backdated and possibly falsified City computer and written documents.
>
> **Since the disciplinary action taken with you in July, I have provided you the time and opportunity to re-commit to your job responsibilities . . . and to improve your job performance. You job performance has not improved . . . [and] your work product and work relationships have deteriorated over time. . . .**
>
> [Gonzalez also stated that she] discovered the arbitrary closing of Building No Permit Violations which **are a serious dereliction of your job responsibilities . . . . constitute gross negligence and warrant termination of your position with the City.** [Gonzalez further stated that the arbitrary closing of building no permit cases could potentially endanger life and property.]

Doc. 20-18.

After satisfying the pre-suit requirements of Title VII and the Florida Civil Rights Act, Julceus brought this lawsuit in December 2008 alleging race and national origin discrimination and retaliation. Julceus argues that he was fired for complaining about Gonzalez's discriminatory actions in his July 25, 2007 email.[2] North Miami contends that it is entitled to summary judgment.

---

[2] Although Julceus's brief does not specify which of Gonzalez's alleged discriminatory acts Julceus protested in his email, the Court finds, as explained below, that

5

**STANDARD FOR SUMMARY JUDGMENT**

Summary judgment is appropriate if the pleadings, depositions, and affidavits show that there is no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An issue of fact is "material" if it is a legal element of the claim under applicable substantive law which might affect the outcome of the case. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986); *Allen v. Tyson Foods*, 121 F.3d 642, 646 (11th Cir. 1997). An issue of fact is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the non-moving party. *Allen,* 121 F.3d at 646*.* On a motion for summary judgment, the Court must view all the evidence and all factual inferences drawn therefrom in the light most favorable to the non-moving party and determine whether the evidence could reasonably sustain a jury verdict for the non-movant. *Celotex*, 477 U.S. at 322-23; *Allen,* 121 F.3d at 646.

While the burden on the movant is great, the opposing party has a duty to present affirmative evidence in order to defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 252. A mere "scintilla" of evidence in favor of the non-moving party, or evidence that is merely colorable or not significantly probative is not enough. *Id.*; *see also Mayfield v. Patterson Pump Co.*, 101 F.3d 1371, 1376 (11th Cir. 1996) (conclusory allegations and conjecture cannot be the basis for denying summary judgment).

**ANALYSIS**

**A.     INTENTIONAL DISCRIMINATION**

Julceus claims that Gonzalez unlawfully discriminated against him by promoting Graham to the position of minimum housing supervisor and providing Graham, but not Julceus, with a pay increase for training a third employee.

**1.     Standard for Discrimination Under Title VII and the FCRA**

Title VII provides a civil remedy for employees who are victims of discrimination in the work place by making it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). An employee can

---

the email can be construed as a complaint about the written reprimand that Gonzalez issued Julceus on July 6, 2007.

satisfy his burden at the summary judgment stage with circumstantial evidence using the burden shifting scheme established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  In a failure to promote case, the *McDonnell Douglas* test requires that the employee show that (1) he is a member of a protected class; (2) he was qualified for and applied for the promotion; (3) he was rejected; and (4) the position was filled by someone outside of his protected class.  *Walker v. Mortham*, 158 F.3d 1177, 1186 (11th Cir. 1998).  "However, where an employer does not formally announce a position, but rather uses informal and subjective procedures to identify a candidate, a plaintiff need not show under the second prong that he applied for the position—only that the employer had some reason to consider him for the post."  *Vessels v. Atlanta Indep. Sch. Sys.*, 408 F.3d 763, 768 (11th Cir. 2005) (citing *Jones v. Firestone Tire & Rubber Co.*, 977 F.2d 527, 533 (11th Cir. 1992)).

When an employee establishes a prima facie case for intentional discrimination, the burden shifts to the employer to proffer a legitimate, nondiscriminatory reason for the employer's action.  *See Rojas v. Florida,* 285 F.3d 1339, 1342 (11th Cir. 2002).  The burden on the employer here is slight, requiring only that "the [employer] produce, not prove, a nondiscriminatory reason."  *Walker v. Nations Bank of Fla., N.A.*, 53 F.3d 1548, 1556 (11th Cir. 1995).  If an employer puts forth a legitimate, nondiscriminatory reason, the burden returns to the employee to prove by a preponderance of the evidence that intentional discrimination motivated the employer or that the "legitimate" reason offered is merely a pretext for prohibited discrimination.  *See Rojas*, 285 F.3d at 1342; *see also St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993).

Courts have held that an employee can survive summary judgment by showing sufficient disputed facts which could demonstrate that the "legitimate" reason offered for the employment action was merely pretextual, had no basis in fact, or was insufficient to motivate the employment decision.  *See Humphrey v. Sears, Roebuck, and Co.*, 192 F. Supp. 2d 1371, 1375-76 (S.D. Fla. 2002).  However, "if the proffered reason is one that might motivate a reasonable employer, a plaintiff cannot recast the reason but must meet it head on and rebut it.  Quarreling with that reason is not sufficient."  *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1088 (11th Cir. 2004) (citation omitted).  Although the same evidence used to establish a prima facie case can be used to cast doubt on an employer's proffered motive, "the plaintiff cannot simply stand on her prima facie case; instead, she must convince the court that the evidence in the case *as a whole* preponderates in favor of a finding of intentional discrimination by the defendant."  *Mortham*, 158 F.3d at 1184-85 & n.12.

7

### 2. Julceus's Failure to Promote Claims

Julceus alleges that Gonzalez violated Title VII by discriminating against him based on his race and national origin when she promoted Graham to minimum housing supervisor. North Miami argues that Julceus is unable meet his prima facie burden of showing that he was qualified for the promotion and that Julceus cannot rebut North Miami's non-discriminatory explanation that Graham was promoted because he possessed superior qualifications for a supervisory code enforcement position. According to North Miami, Graham's qualifications, which included extensive supervisory experience, far exceeded Julceus's qualifications, which did not include any supervisory experience. North Miami also contends that Graham had more code enforcement experience than Julceus. The record confirms North Miami's position.

The Eleventh Circuit has held that the issue of comparative qualifications is properly assessed at the third stage of the *McDonnell Douglas* burden shifting scheme, where the employee must rebut the employer's non-discriminatory explanation; however, at the prima facie stage the employee still has the burden of proving that he was qualified for the promotion. *See Walker*, 158 F.3d at 1193; *see also* LARSON, EMPLOYMENT DISCRIMINATION § 8.02 (Matthew Bender & Co., Inc. 2009). The Court finds, however, that regardless of whether Julceus's qualifications are analyzed as part of his prima facie case, or as evidence of pretext to rebut North Miami's non-discriminatory explanation that Graham possessed superior qualifications, Julceus has failed to carry his burden because has neither offered evidence that he was qualified for the promotion nor that he possessed qualifications comparable to Graham's.

Graham had more experience than Julceus both as a code enforcement officer and as a supervisor. According to Graham's employment application and deposition testimony, he had over 16 years of supervisory experience. As an officer in the North Miami Beach police department, Graham was promoted to several supervisory positions, including commander in the police force in charge of code enforcement, a position which he held for over four years. Graham had more than a decade-and-a-half of supervisory experience and at least seven years of code enforcement experience at the time of his promotion. *See* Docs. 20-18; 34-6 at 21:11-23; 36-3 at 9:5-10:8. Julceus, on the other hand, had less than two years of code enforcement experience and no supervisory experience. *See* Doc. 20-2 at 21:18-22:1, 26:3-28:8, 27:18-24.

Julceus, however, contends that he and Graham were "peers" and therefore similarly situated in their qualifications for promotion, because they were both certified code enforcement officers and reported to the same person. But the mere fact that two individuals have the same job description does not indicate that they possess similar or equivalent qualifications for another, different position. In this case, Julceus and Graham were both certified code enforcement officers, but they were not equally qualified for promotion, because Graham had more code enforcement experience than Julceus and significant supervisory experience—experience which Julceus lacked. Julceus, therefore, has not met his prima facie burden of showing that his "employer had some reason to consider him for the post," because he has not shown that he was qualified to hold a supervisory position. *Vessels*, 408 F.3d at 768. Nor has Julceus presented any evidence capable of demonstrating that North Miami's contention that Graham was hired because of his superior qualifications was a pretext for discrimination. Accordingly, North Miami is entitled to summary judgment on Julceus's failure to promote claim.

### 3. Julceus's Pay Discrimination Claims

Julceus claims that Gonzalez discriminated against him when she recommended Graham for a 5% pay increase for training Vidalyn Christie but made no similar recommendation for Julceus. In a pay discrimination case, an employee must show that (1) he belongs to a protected class; (2) he received low wages; (3) similarly situated comparators outside the protected class received higher compensation; and (4) he was qualified to receive the higher wage. *See Cooper v. Southern Co.*, 390 F.3d 695, 734-735 (11th Cir. 2004).

North Miami contends that Julceus and Graham were not similarly situated because the training tasks Graham performed were significantly more time consuming and important than anything Julceus did. Julceus's "training" consisted of allowing Christie to shadow him during his inspection rounds for two days. *See* Doc. 20-2 at 68:25-69:11. Graham, by contrast, trained Christie in the full range of duties performed by code enforcement officers over a 60 day period. *See* Docs. 25-3; 36-3 at 8:22-9:4. Julceus claims that both he and Graham "participated in training" Christie, but ignores the disparity in the type and amount of training each performed. Given that Julceus spent two days with Christie while Graham spent 60, and that Julceus was not charged, as Graham was, in training Christie in the full range of responsibilities of a code enforcement officer, it is clear that Julceus and Graham were not similarly situated and that these circumstances do not "give rise to an inference of unlawful discrimination." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

9

The Court will therefore grant North Miami summary judgment on Julceus's pay discrimination claims.[3]

**B.     RETALIATION**

Julceus argues that he was fired because of his good faith opposition to employment practices outlawed by Title VII. He claims that his July 2007 email accusing Gonzalez of race and national origin discrimination constitutes statutorily protected expression and was the cause of his termination more than five months later.

### 1.     Standard for Retaliation Under Title VII and the FCRA

Title VII's anti-retaliation clause is broader than its anti-discrimination clause; an employee may pursue a claim for retaliation even if the employee's complaints of discriminations are ultimately meritless, so long as the employee has "a good faith, reasonable belief that the challenged practices violate Title VII." *Rollins v. State of Fla. Dep't of Law Enforcement*, 868 F.2d 397, 400 (11th Cir. 1989); *see also Weeks v. Harden Mfg. Corp.*, 291 F.3d 1307, 1312 (11th Cir. 2002); *Little v. United Techs., Carrier Transicold Div.*, 103 F.3d 956, 960 (11th Cir. 1997). To establish a prima facie case of retaliation an employee must show that (1) he engaged in statutorily protected expression; (2) he suffered an adverse employment action; and (3) there was some causal relationship or connection between the two events. *Holifield v. Reno*, 115 F.3d 1555, 1566 (11th Cir. 1997).

Statutorily protected expression can be in the form of "opposition" or "participation." Under Title VII's opposition clause, "an employer may not retaliate against an employee because the employee 'has opposed any practice made an unlawful employment practice by [Title VII].'" *EEOC v. Total Sys. Servs.*, 221 F.3d 1171, 1174 (11th Cir. 2000) (quoting 42 U.S.C. § 2000e-3(a)). "[U]nder the participation clause, an employer may not retaliate

---

[3] Julceus's complaint also alleges that Gonzalez discriminated against him by failing to reimburse him for expenses incurred at a conference. Julceus does not pursue this claim in his brief, however, and it is therefore abandoned. *See Ledford v. Peeples*, 568 F.3d 1258, 1285 (11th Cir. 2009) (treating as abandoned claims not argued in a party's brief). Additionally, Julceus does not pursue his claim for discriminatory denial of overtime pay alleged in his complaint, other than including a conclusory statement in his supplemental response that he "was denied overtime when [his] white peer was given bundles of it." Julceus does not point to any evidence that he was denied overtime pay for hours that he actually worked. The payroll records submitted by Julceus indicate that Julcues worked fewer overtime hours than Graham, but Julcues does not put forward any other evidence on this issue or advance any argument explaining how his failure to work additional overtime hours was the result of unlawful discrimination. *See* Doc. 34-7. Accordingly, Julceus has not satisfied his prima facie burden on this issue.

against an employee because the employee 'has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII].'" *Id.* Following the Supreme Court's decision in *Burlington Northern & Santa Fe Railway. Co. v. White*, 548 U.S. 53 (2006), the type of conduct constituting an adverse employment action "has been broadened from that which adversely effects the [employee's] conditions of employment or employment status to that which has a materially adverse effect on the [employee], irrespective of whether it is employment or workplace-related." *Crawford v. Carroll*, 529 F.3d 961, 973 (11th Cir. 2008). Finally, "[t]o establish a causal connection, a plaintiff must show that the decision-makers were aware of the protected conduct and that the protected activity and the adverse action were not wholly unrelated." *Gupta v. Florida Bd. of Regents*, 212 F.3d 571, 590 (11th Cir. 2000) (quotations and alterations omitted).

Once the employee establishes a prima facie case of retaliation, the burden shifts to the employer to articulate a non-retaliatory reason for its treatment of the employee. *Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir. 2001). If the employer presents a non-retaliatory explanation for its actions, the burden returns to the employee to show that the employer's explanation is a pretext for retaliation. *See id.* "A reason is not pretext for [retaliation] unless it is shown *both* that the reason was false, *and* that [retaliation] was the real reason." *Brooks v. County Comm'n of Jefferson County, Ala.*, 446 F.3d 1160, 1163 (11th Cir. 2006) (quotations omitted). The employee can meet his burden "either directly by persuading the court that a [retaliatory] reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Id.* (quotations omitted). However, "[p]rovided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason." *Chapman v. AI Transport*, 229 F.3d 1012, 1030 (11th Cir. 2000).

**2.   Julceus's Prima Facie Case**

Julceus claims that he engaged in statutorily protected expression by opposing Gonzalez's discriminatory employment actions in his July 25, 2007 email. *See* Doc. 20-8. North Miami argues that Julceus's email cannot be construed as opposition under Title VII because it did not specifically mention the discriminatory actions that Julceus was opposing. The Court finds, however, that the email can be construed as opposition to Julceus's written reprimand in light of the Supreme Court's recent decision in *Crawford v. Metropolitan Government of Nashville & Davidson County*, 129 S. Ct. 846 (2009). *Crawford* explained

that Title VII's "opposition clause" is extremely broad, and extends to "someone who has taken no action at all to advance a position beyond disclosing it." *Id.* at 851. Julceus has therefore made a sufficient showing that he engaged in statutorily protected activity, and Julceus's termination is an adverse employment action. Julceus must now satisfy the third element of his prima facie case by demonstrating that there was a causal relationship between his opposition and Gonzalez's decision to fire him.[4]

An employee can satisfy his burden of demonstrating the presence of a causal connection by showing a close temporal connection between his protected expression and his termination. *See Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004). The temporal proximity must be very close, however, and if "there is a substantial delay between the protected expression and the adverse action" and "the absence of other evidence tending to show causation, the complaint of retaliation fails as a matter of law." *Id.* In *Higdon*, the Eleventh Circuit held that a three month period between the protected conduct and the alleged retaliatory action did "not allow a reasonable inference of a causal relation between the protected expression and the adverse action." *Id.* at 1221; *see also Richmond v. Oneok, Inc.*, 120 F.3d 205, 209 (10th Cir. 1997) (3-month period insufficient); *Hughes v. Derwinski*, 967 F.2d 1168, 1174-75 (7th Cir. 1992) (4-month period insufficient). In this case, over five months elapsed from Julceus's opposition email of July 25, 2007, to his termination on January 4, 2009. Therefore, under *Higdon*, a causal connection cannot be inferred by the proximity of the two events and Julceus is required to present additional evidence of causation.

Julceus appears to argue that a causal connection should be inferred from the fact that Gonzalez spent an inordinate amount of her time following up on and investigating Julceus's unresolved cases. But Julceus does not persuasively explain why this should create an inference of retaliation. As Julceus's supervisor, Gonzalez had the responsibility of monitoring Julceus's cases. Given that Gonzalez reprimanded Julceus for failing to adequately resolve cases, it is only natural that she would follow up on those cases to

---

[4] Julceus's complaint alleges that he opposed other discriminatory practices by Gonzalez. *See* Compl. ¶ 25. However, there is no evidence in the record to support these allegations; in fact, during Julceus's deposition he could not recall ever complaining about Gonzalez's alleged discrimination in these instances. *See* Doc. 20-2 at 89:2-90:2, 90:17-91:16, 185:10-13, 188:5-9, 188:13-19, 196:5-196:10. Julceus made one vague reference to complaining to Rebecca Jones about "discrimination," but gave no indication of what discriminatory acts he complained. *See id.* at 195:19-196:4.

12

determine whether Julceus took appropriate corrective actions. The mere fact that an employer scrutinizes an employee's work product following the employee's opposition to perceived discriminatory conduct does not in itself creates an inference of discrimination. To the contrary, when an employer contemplates a course of disciplinary action *before* the employee's protected expression occurs, it evinces a lack of causation. *See Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 272 (2001) (employer's learning of lawsuit filed by employee one month before transferring the employee was "immaterial in light of the fact that [the employer] concededly was contemplating the transfer before it learned of the suit").

In this case, Gonzalez began scrutinizing Julceus's unresolved cases before she reprimanded him and before Julceus accused her of unlawful discrimination. Standing alone, therefore, Gonzalez's continued scrutiny of Julceus's cases cannot be evidence of retaliation. Additionally, in the month's following Julceus's reprimand, Graham twice alerted Gonzalez of deficiencies in Julceus's work. *See* Docs. 20-13; 25-5. This provided Gonzalez with another independent, non-retaliatory reason to monitor and scrutinize Julceus's cases. Thus, Julceus cannot satisfy the causal connection element as his prima facie case, and North Miami is entitled to summary judgment on Julceus's retaliation claims.

### 3. Julceus's Evidence of Pretext

Alternatively, North Miami is also entitled to summary judgment on Julceus's retaliation claims because Julceus cannot satisfy his burden of showing that the articulated reasons for terminating him were a pretext for retaliation. North Miami has presented substantial evidence that Julceus had a duty to conduct follow-up inspections and that he was fired because he (1) failed to re-inspect properties, (2) claimed that he inspected properties by falsely indicating inspection dates in his work log, and (3) arbitrarily closed cases at least in part based on those falsified inspections. Julceus's arguments that North Miami's proffered reasons for terminating him are a pretext for discrimination do not rebut this evidence.

Julceus argues that there is sufficient evidence to disbelieve Gonzalez's stated reasons for firing him and to infer that discrimination was Gonzalez's true motivation. According to Julceus, Graham told Gonzalez that there was no need for Julceus to do follow-up inspections. To support this contention, Julceus points to an email from Graham to Gonzalez in which Graham notes that some of Julceus's cases did not require a physical re-inspection of the property. After reviewing the entire email, however, it appears that Julceus has selectively quoted from it out of context. The email explicitly states that Graham returned copies of Julceus's unresolved complaints to Julceus after stamping them with the

words "'Re-Inspection Request,' followed by a section below the stamp with lines titled inspection date, inspected by, and results." Doc. 25-5. Read as a whole, therefore, the email does not support the proposition that Julceus puts forward that he did not have a duty to re-inspect the properties associated with unresolved code violations. In fact, the email actually supports North Miami's contention that Julceus neglected to adequately follow up on unresolved code violations when he failed to conduct re-inspections.

Despite Julceus's contention to the contrary, the only reasonable conclusion to draw from the record is that Julceus had an affirmative duty to re-inspect properties. According to the depositions of Graham and another code enforcement officer named Nyrva Chavannes—neither of whom Julceus has accused of discrimination—Julceus's had a clear duty to conduct follow-up inspections after issuing initial code violations. According to standard operating procedures, when a housing code officer submits a code violation, the computer automatically generates a re-inspection date. The housing code officer has discretion to change the re-inspection date, but not to forgo a follow-up inspection. *See* Doc. 36-4 at 19:4-19. And when housing code officers are given lists of unresolved violations (such as the extensive list that Graham gave Julceus), it is understood that the officer will "go out to each and every property" and "inspect it to make sure that the violation [] has abated." Doc. 36-4 at 24:3-24; *see also* Doc. 36-3 at 40:15-42:7 ("The officer should clearly know from looking at that stamp that they had to go do a reinspection[.]").

In addition to the fact that re-inspections are required as part of standard procedures, in his case Julceus was also specifically told on numerous occasions that he a duty to conduct re-inspections. Julceus's July 2007 written reprimand cited his "lack of follow-up regarding minimum housing code violations," and Gonzalez specifically instructed Julceus by email a few days later to focus his efforts on unresolved violations, which included conducting a "[r]e-inspection of each of the unresolved violations." Docs. 20-7, 20-8. In September, two-and-a-half months after Gonzalez instructed Julceus to do follow-up inspections, Graham emailed Julceus and again instructed him to "check each case file and take appropriate follow-up action to close each case or to bring it forward for enforcement action." Doc. 20-12.

Both Graham and Gonzalez testified that only "building no permit" violations could be closed without a subsequent inspection of the premises. Docs. 34-2 at 53:8-21; 34-6 at 18:17-23. This is consistent with Graham's email to Gonzalez that some of Julceus's outstanding cases did not require re-inspections because they could be resolved "by *permit*

14

file review." Doc. 25-5 (emphasis added). Julceus's termination notice, however, classified only 13 of his 129 closed cases as falling into the violation category of building no permit violations. *See* Doc. 20-18. Additionally, even though Julceus may not have had a duty to re-inspect those properties cited with building no permit violations, he was still required to follow up on these violations in some meaningful way. But Gonzalez found that Julceus had closed building no permit cases arbitrarily, which could potentially endanger human life and city property. *See id.*

Julceus does rebut this evidence, and has not otherwise presented any evidence indicating that Gonzalez's treatment of him was motivated by his race or national origin. Absent evidence that Gonzalez's explanation for terminating Julceus was a dishonest attempt to conceal prohibited discrimination, Julceus's retaliation claims cannot survive summary judgments. *See Combs v. Plantation Patterns, Meadowcraft, Inc.*, 106 F.3d 1519, 1543 (11th Cir. 1997) (relevant inquiry in a Title VII case "is limited to whether the employer gave an honest explanation of its behavior"); *Dalmau v. Vicao Aerea Rio-Grandense, S.A.*, 337 F. Supp. 2d 1299, 1308 (S.D. Fla. 2004) (issue is not whether employer's non-discrimination explanation is an exercise of sound business judgment but whether it is "an honest explanation for its decision"). Julceus cannot survive summary judgment "by simply quarrelling with the wisdom" of conducting follow-up inspections. *Chapman*, 229 F.3d at 1030.

Julceus also claims that Gonzalez's stated reasons for terminating him are pretextual because, according to Julceus, Gonzalez took inconsistent positions on the reason for terminating Julceus. Accordingly to Julceus, Gonzalez *wanted* to fire Julceus in July 2007 because he held a real estate license, while in January 2008 Gonzalez accused Julceus of falsifying records. According to Julceus, Gonzalez subjected him to a lengthy tirade in July, screaming at him "I will terminate you… Maybe, you spend too much time on the phone; I know you have a real estate license and mortgage license." Doc. 20-10.

Julceus's argument, however, is not persuasive. First, it mischaracterizes the record by understating the reasons for Julceus's termination. Gonzalez fired Julceus for neglecting his case load, failing to conduct needed follow-up inspections, arbitrarily closing cases, and, finally, backdating (falsifying) computer entries. Second, Gonzalez's alleged tirade occurred on July 6, but Julceus did not send his email accusing Gonzalez of discrimination until July 25. Gonzalez's alleged tirade, therefore, cannot be evidence of her state of mind in determination whether she fired Julceus in retaliation for his protected expression because

15

such expression had yet to occur. At most, Gonzalez's remarks, allegedly uttered almost six months before Julceus's termination, indicate that a tense and at times angry work relationship existed between Julceus and Gonzalez, but they do not evince a racial, retaliatory, or otherwise unlawful discriminatory motive on Gonzalez's part. *Cf. Burlington Northern*, 548 U.S. at 68 ("Title VII . . . does not set forth a general civility code for the American workplace.") (quotations omitted). Moreover, Gonzalez's alleged remarks do not in any way rebut that Julceus neglected his cases by failing to conduct needed follow-up inspections and closed cases based upon fictitious inspections. *See, e.g.*, 36-3 at 39:12-40:1. Accordingly, Julceus cannot meet his burden of rebutting North Miami's proffered explanation for its decision to fire Julceus and demonstrating that retaliation was the real reason. *See Brooks*. 446 F.3d at 1163; *Wilson*, 376 F.3d at 1088; *Chapman*, 229 F.3d at 1030.[5]

## CONCLUSION

For the reasons set forth above, Julceus has failed to produce any probative evidence that North Miami discriminated against him based on his race or national origin, or retaliated against him for complaining about alleged discrimination. No genuine issue of material fact exists and North Miami is entitled to judgment as a matter of law. Accordingly, North Miami's motion for summary judgment is granted. The Court will enter final judgment for North Miami.

DONE and ORDERED in Chamber, Miami, Florida, November 13, 2009.

Paul C. Huck
United States District Judge

Copies furnished to:
Counsel of Record

---

[5] Although Julceus does not allege discriminatory termination in his complaint, he nonetheless pursues this claim in his response brief. Assuming that Julceus can pursue this claim, North Miami would still be entitled to summary judgment because, as explained above, Julceus cannot show that North Miami's proffered reason for terminating him is a pretext for discrimination. *See Rojas*, 285 F.3d at 1342.